UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CV 24 6586

STEVEN AMMANN,
Plaintiff,

v.

SHARESTATES INC.,
INTERCAP EQUITY, a Canadian company,
INTERCAP INCOME, a Canadian company,
GOLENBOCK EISEMAN ASSOR BELL & PESKOE LLP,
ALLEN SHAYANFEKR,
RAY DAVOODI,
RADNI DAVOODI,
DAVID SAKHAI,
JASON CHAPNIK,
JAMES MERKUR,
Defendants.

Case No. BROWN, J.
Complaint for a Civil Case
Jury Trial Demanded

DUNST, M.J.

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ SEP 16 2024 ★
LONG ISLAND OFFICE

RECEIVED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ SEP 16 2024 ★
LONG ISLAND OFFICE

COMPLAINT FOR MALICIOUS PROSECUTION, ABUSE OF PROCESS, FRAUD ON THE COURT, FRAUDULENT SELF-DEALING, FRAUDULENT ACCOUNTING, FRAUDULENT NEGATIVE COMPENSATION, FRAUDULENT MASTER LOAN PURCHASE AGREEMENTS (MLPAs), FRIVOLOUS COUNTERCLAIMS, FRAUDULENT LOAN HIDING, FRAUDULENT LOANS TO FRIENDS AND FAMILY, FRAUDULENT BROKER PAYMENTS, AND FRAUDULENT PERJURY

1. Introduction

Plaintiff Steven Ammann is an individual seeking justice and his fair day in court. For many years, he was bullied by Sharestates, which forced him to initiate Ammann v. Sharestates, Case 2:21-cv-02766-JS-ST. Since then, Mr. Ammann has been subjected to further bullying and harassment by the defendants for 40 months of protracted litigation. He was forced to file nine motions to compel due to the defendants' obstruction during the discovery process. Additionally, all defendants were aware that Sharestates stopped Steven's pay in retaliation when he filed Ammann v. Sharestates. This pay was admitted by Sharestates to be owed and was not disputed. At the same time, they stopped his pay, the defendants filed the counterclaim for illegal activities, clearly demonstrating that both actions were part of an intentional retaliatory scheme. Furthermore, all defendants were aware that Sharestates gave loans to friends and family against their underwriting standards and at preferential rates, benefiting their friends and family at the expense of the plaintiff and others. Plaintiff also alleges that Sharestates made fraudulent broker payments to brokers different from those listed on term sheets, without broker agreements in place. Most of these payments were made outside of the HUD closing statement as private wire transfers, with the intent to hide them from borrowers. He is now pursuing this action against Defendants Sharestates Inc., Intercap Equity, Intercap Income, Golenbock Eiseman Assor Bell &

REC'D IN PRO SE OFFICE
SEP 16 '24 PM3:07

Peskoe LLP, Allen Shayanfekr, Ray Davoodi, Radni Davoodi, David Sakhai, Jason Chapnik, and James Merkur for malicious prosecution, abuse of process, fraud on the court, fraudulent self-dealing, fraudulent accounting, fraudulent negative compensation, fraudulent Master Loan Purchase Agreements (MLPAs), the filing of frivolous counterclaims, the fraudulent hiding of loans, fraudulent loans to friends and family, fraudulent broker payments, and fraudulent perjury during the discovery process.

This action arises from the frivolous and retaliatory counterclaim filed against Mr. Ammann in the case of Ammann v. Sharestates, Inc., et al. The counterclaim, which alleged that Mr. Ammann was engaged in illegal activities, was designed not only to damage his reputation and professional standing but also to prevent him from working for competitors, as he was admitted by Defendants to be a valuable asset. This counterclaim was ultimately found to be frivolous, and the Report and Recommendation of Magistrate Judge Tiscione, which found the counterclaim to be baseless and retaliatory, was granted by District Judge Seybert.

Plaintiff also asserts that the defendants have abused the legal process to delay Ammann v. Sharestates for as long as possible, forcing him to spend a fortune while attempting to avoid liability. The defendants have run Sharestates into severe financial trouble, so bad that they now claim they cannot afford an accountant to create a simple monthly report, as ordered by Magistrate Judge Tiscione to be produced each month. Despite their financial mismanagement, the defendants have continued to obstruct the case and hide from their legal obligations.

2. Jurisdiction and Venue

This Court has jurisdiction over this matter under 28 U.S.C. § 1332, as the parties are citizens of different states or countries, and the amount in controversy exceeds $75,000. Venue is proper in this Court under 28 U.S.C. § 1391(b), as the Defendants are based in New York or conduct substantial business in New York, and the actions giving rise to this claim occurred within the Eastern District of New York.

3. Parties

• Plaintiff: Steven Ammann is an individual and resident of Miami, Florida. 1100 Brickell Bay Dr APT 62M, Miami, FL 33131.

• Defendants:

  • Sharestates Inc.: A Delaware corporation with its principal place of business in New York.
  • Intercap Equity: A Canadian company involved in the ownership and operations of Sharestates.
  • Intercap Income: A Canadian company affiliated with Intercap Equity.
  • Golenbock Eiseman Assor Bell & Peskoe LLP: A law firm based in New York that represented Sharestates in the underlying legal matter.
  • Allen Shayanfekr: An individual and executive at Sharestates Inc., residing in New York.

• Ray Davoodi, Radni Davoodi, David Sakhai: Individuals associated with Sharestates Inc., involved in decision-making and business operations and board members, residing in New York.

• Jason Chapnik and James Merkur: Individuals associated with the board of Sharestates, responsible for overseeing the company's business activities and decision-making processes, residing in Canada.

4. Factual Background

• a. In 2021, Plaintiff Steven Ammann initiated a lawsuit against Sharestates Inc. and Allen Shayanfekr, alleging breach of contract and violations of New York Labor Laws.
• b. Defendants Sharestates Inc., Intercap Equity, Intercap Income, Golenbock Eiseman Assor Bell & Peskoe LLP, and the named individual defendants were all involved in the decision-making processes related to the counterclaim filed against Mr. Ammann.
• c. In retaliation for Mr. Ammann's lawsuit, Defendants filed a counterclaim alleging that Mr. Ammann had engaged in illegal activities, which was without any factual or legal basis and designed to damage his reputation and prevent him from working for a competitor, recognizing his value as an asset in the industry.
• d. The counterclaim was found to be baseless and was filed without any factual or legal basis, as evidenced by the Report and Recommendation of Magistrate Judge Tiscione, which was adopted in full by District Judge Seybert, who ruled that the counterclaim was frivolous and brought for an improper purpose.
• e. During discovery, Allen Shayanfekr admitted that the decision to file the counterclaim was a collective one by Defendants, indicating that the counterclaim was filed with the intent to harass and retaliate against Mr. Ammann rather than to resolve any legitimate legal dispute. Additionally, all defendants were aware that Sharestates stopped paying Mr. Ammann the compensation that Sharestates admitted they owed him—compensation that was not disputed—at the same time they filed the counterclaim, clearly demonstrating the retaliatory intent behind both actions.
• f. Plaintiff alleges that all Defendants were aware of and participated in fraudulent self-dealing, using their roles in Sharestates and related entities for personal gain at the expense of the company and its stakeholders, including Plaintiff.
• g. Plaintiff further alleges that all Defendants were aware of fraudulent accounting practices being employed in the Ammann v. Sharestates lawsuit, designed to conceal the misappropriation of funds and to obstruct Plaintiff's ability to access rightful compensation and commissions.
• h. Plaintiff also alleges that Defendants were complicit in the imposition of fraudulent negative compensation charges on Plaintiff, effectively forcing Plaintiff to pay money to Defendants for work he performed and for decisions made by Sharestates, in direct violation of their agreements.
• i. Plaintiff further alleges that all Defendants knowingly engaged in the creation of fraudulent MLPAs with parties that Plaintiff introduced to Sharestates, in an effort to replace Plaintiff's MLPA and avoid paying him the compensation owed for his contributions.
• j. Plaintiff alleges that Defendants were aware of two frivolous counterclaims, one alleging that Plaintiff engaged in illegal activities and another for overpayment. For the

overpayment claim, Defendants produced four different versions of a Rule 26 disclosure, all of which were intentionally inaccurate.

• k. Plaintiff also alleges that Defendants were aware of the fraudulent hiding of loans sold to investors introduced by Plaintiff, such as Peter Raith and Chris DeMulder, in an attempt to conceal the financial transactions from Plaintiff and avoid paying him rightful commissions.

• l. Plaintiff further alleges that Sharestates gave loans to friends and family against their underwriting standards and at preferential rates, benefiting their friends and family but causing harm to Plaintiff and other investors.

• m. Plaintiff further alleges that Sharestates made fraudulent broker payments to brokers different from those listed on term sheets, without broker agreements in place. Most of these payments were made off the closing statement as private wire transfers, with the intent to hide them from borrowers.

• n. Plaintiff further alleges that Amy Doshi, Sharestates in-house counsel, committed fraudulent perjury during the discovery process, and multiple parties engaged in obstruction during the discovery process to hinder Plaintiff's ability to obtain necessary evidence and compensation.

• o. Plaintiff also claims that the defendants have abused the legal process to delay the Ammann v. Sharestates lawsuit as long as possible, forcing Plaintiff to spend significant financial resources. While attempting to hide from liability, the defendants have run Sharestates into severe financial trouble, now claiming they are unable to afford an accountant to create the simple monthly report that Magistrate Judge Tiscione ordered them to produce on three separate occasions.

• p. Plaintiff further alleges that Defendants have committed fraud on the court by submitting false testimony, fabricating evidence, and engaging in deliberate misconduct during the litigation process, all with the intent to deceive the court and prevent justice from being served.

5. Claims for Relief

• a. Malicious Prosecution: Defendants acted with malice in initiating and pursuing a counterclaim against Plaintiff without probable cause, knowing that the claims were frivolous. The filing of this counterclaim caused Plaintiff to suffer damages, including harm to his reputation, lost wages from being unable to obtain similar employment, and financial losses.

• b. Abuse of Process: Defendants willfully and improperly used the legal process by filing and pursuing the counterclaim with an ulterior motive. The counterclaim was not filed to achieve justice or resolve a legitimate legal dispute but to harass, retaliate, and financially burden the Plaintiff. This improper use of process was not justified and was aimed at achieving an objective that the legal process was not intended to accomplish. The abuse of process claim is further supported by the judicial findings in the Report and Recommendation by Magistrate Judge Tiscione, which was affirmed by Judge Seybert, establishing that the counterclaim was without basis and served an improper purpose.

• c. Fraud on the Court: Defendants engaged in fraud on the court by submitting false testimony, fabricating evidence, and engaging in deliberate misconduct designed to deceive the court, hinder justice, and prevent Plaintiff from obtaining a fair outcome in the litigation.

• d. Fraudulent Self-Dealing: Defendants, by virtue of their roles and control over Sharestates and related entities, engaged in fraudulent self-dealing, knowingly benefiting from corporate transactions and decisions that harmed the company, its stakeholders, and the Plaintiff.

• e. Fraudulent Accounting: Defendants knowingly engaged in fraudulent accounting practices to conceal the misappropriation of funds, alter financial records, and prevent Plaintiff from accessing rightful compensation and commissions owed in connection with the Ammann v. Sharestates lawsuit.

• f. Fraudulent Negative Compensation: Defendants imposed fraudulent negative compensation on Plaintiff, forcing him to pay money to Defendants for work he performed for Sharestates and for decisions made by Sharestates, in direct violation of their agreements.

• g. Fraudulent MLPAs: Defendants knowingly created fraudulent MLPAs with parties introduced by Plaintiff to Sharestates, in an effort to replace Plaintiff's MLPA and avoid compensating him for his contributions and rightful payments under the original agreements.

• h. Frivolous Counterclaims: Defendants filed two frivolous counterclaims, one alleging that Plaintiff engaged in illegal activities, and the other for overpayment. Defendants produced four intentionally inaccurate Rule 26 disclosures related to the overpayment claim.

• i. Fraudulent Hiding of Loans: Defendants knowingly hid loans sold to investors introduced by Plaintiff, including Peter Raith and Chris DeMulder, to avoid paying Plaintiff rightful commissions.

• j. Fraudulent Perjury: Amy Doshi committed fraudulent perjury during the discovery process, and multiple defendants engaged in obstruction during discovery to prevent Plaintiff from accessing evidence necessary to prove his claims and secure rightful compensation.

• k. Fraudulent Broker Payments: Sharestates made fraudulent broker payments to brokers different from those listed on term sheets and without broker agreements in place. Most of these payments were made as private wire transfers outside of the HUD closing statement, with the intent to hide them from borrowers.

6. Prayer for Relief

Plaintiff respectfully requests that this Court grant the following relief:

• a. Compensatory damages for the harm caused to Plaintiff's reputation, lost wages from being unable to secure similar employment, and financial losses.
• b. Punitive damages to punish Defendants for their malicious, fraudulent, and retaliatory conduct.
• c. Attorneys' fees and costs incurred in this action.
• d. Any other relief that the Court deems just and proper.

7. Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

A. For Parties Without an Attorney
I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: September 13, 2024.

Signature of Plaintiff ______SAA______

Printed Name of Plaintiff ______Steven Ammann______

Steven Ammann
1100 Brickell Bay Dr APT 62M
Miami, FL 33131

Retail

UNITED STATES POSTAL SERVICE®

U.S. POSTAGE PAID
PM
MIAMI, FL 33131
SEP 13, 2024

11722

$9.85

RDC 03 0 Lb 1.20 Oz S2324N504238-05

RECEIVED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ SEP 16 2024 ★
LONG ISLAND OFFICE

Clerk's Office
United States District Court, EDNY
100 Federal Plaza
Central Islip, NY 11722
Attn: Pro Se Office

EXPECTED DELIVERY DAY: 09/16/24

USPS TRACKING® #

9505 5144 0251 4257 7822 24

FSC
MIX
Envelope
FSC® C137131

THIS ENVELOPE IS RECYCLABLE AND MADE WITH 30% POST CONSUMER CONTENT

© USPS 2019