UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
STEVEN AMMANN,

                            Plaintiff,

            v.

SHARESTATES INC. and ALLEN SHAYANFEKR,

                            Defendants.                            **MEMORANDUM**
                                                                   **AND ORDER**
------------------------------------------------------------------X    21-CV-2766-SJB-ST
STEVEN AMMANN,                                                     24-CV-6586-SJB-ST

                            Plaintiff,

            v.

SHARESTATES INC. et al.,

                            Defendants.
------------------------------------------------------------------X
**BULSARA, United States District Judge:**

        Pending before the Court are motions in two related cases commenced by

Plaintiff Steven Ammann ("Ammann").  Ammann, then represented by counsel, filed

the first case in May 2021, naming as Defendants his employer Sharestates, Inc.

("Sharestates") and Allen Shayanfekr ("Shayanfekr"), Sharestates's CEO (collectively,

"*Ammann I* Defendants"), and asserting claims for breach of contract and violations of

the New York Labor Law ("NYLL").  (*Ammann v. Sharestates Inc.*, No. 21-CV-2766

("*Ammann I*"), Compl. dated May 17, 2021, Dkt. No. 1 ¶¶ 10, 15–16).  The litigation

arises from Sharestates's alleged failure to properly compensate Ammann—who

recruited investors to purchase loans originated by Sharestates—according to the

commission rates in his employment agreement.  (*Id.* ¶¶ 1–2).  In September 2024, Ammann, proceeding pro se, began a second action, asserting new claims against Sharestates and Shayanfekr based largely on litigation misconduct in *Ammann I*, and claims against new Defendants Ray Davoodi, Radni Davoodi, David Sakhai, Jason Chapnik, and James Merkur (individuals associated with the Board of Sharestates); Intercap Equity and Intercap Income (two Canadian companies alleged to be involved in the ownership and operation of Sharestates); and Golenbock Eiseman Assor Bell & Peskoe LLP (the law firm previously representing Sharestates).  (*Ammann v. Sharestates Inc.*, No. 24-CV-6586 ("*Ammann II*"), Compl. dated Sep. 16, 2024, Dkt. No. 1 at 2–3).  Several months later, Ammann filed an Amended Complaint in *Ammann II*, naming 37 additional defendants.  (*Ammann II*, Am. Compl. dated Apr. 2, 2025, Dkt. No. 37 ¶¶ 5–26).  *Ammann II* has a total of 47 defendants.

Ammann has moved to amend his Complaint in *Ammann I*, (*Ammann I*, Pl.'s Mot. to Amend filed Aug. 20, 2025, Dkt. No. 188), which the *Ammann I* Defendants oppose, (*Ammann I*, Defs.' Mem. in Opp'n to Pl.'s Mot. to Amend ("Defs.' Opp'n") filed Aug. 20, 2025, Dkt. No. 189).  The *Ammann II* Defendants have moved to dismiss *Ammann II* as duplicative of *Ammann I*.  (*Ammann II*, Defs.' Mot. to Dismiss dated Aug. 5, 2025 ("Defs.' Mot. to Dismiss"), Dkt. No. 136-1).  For the reasons explained below, Ammann's motion to amend his Complaint in *Ammann I* is denied, and the *Ammann II* Defendants' motion to dismiss *Ammann II* is granted.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

*Ammann I* originally alleged that Sharestates breached Ammann's employment contract by failing to pay him his earned wages and commissions, (*Ammann I*, Compl. ¶ 134), and that Sharestates and Shayanfekr violated NYLL Sections 193, 191(1)(c), and 198(1-a), (*id.* ¶¶ 139–59).  Ammann began working for Sharestates, a New York-based real estate lender, in 2016 in its Capital Markets department.  (*Id.* ¶¶ 1, 25).  Ammann's role at the company was to find and introduce potential institutional investors to purchase loans originated by Sharestates.  (*Id.* ¶ 26).  In addition to these duties, Ammann secured Sharestates a warehouse line that "enabled [Sharestates] to fund loans without any equity of its own."  (*Id.* ¶ 37).  About a year after Ammann started working for Sharestates, in March 2017, the parties entered into a written agreement setting forth the terms of Ammann's employment.  (*Id.* ¶ 34).  In short, the agreement provided that Ammann would be compensated by a monthly commission, "calculated at a rate of ten per cent (10%) of gross revenues . . . derived from loans sold to his investors," (*Ammann I*, Compl. ¶ 34), as well as "10% of Gross Revenues on sales utilizing the warehouse line he introduced," (*id.* ¶ 38).  Ammann alleges that Sharestates breached the contract by consistently reporting his commissions inaccurately, resulting in underpayment, (*id.* ¶ 135), and by unilaterally modifying the terms of the agreement to reduce his commissions, (*id.* ¶¶ 64–79, 134).

On June 30, 2021, the *Ammann I* Defendants filed an answer and Sharestates asserted a counterclaim alleging that Ammann failed to maintain a professional securities broker-dealer license required by the Securities Exchange Act, 15 U.S.C.

§ 78o(a)(1).  (*Ammann I*, Defs.' Answer & Countercl., Dkt. No. 8 at 10–11).  Ammann then amended his complaint, (*Ammann I*, Am. Compl. dated Sep. 29, 2022 ("FAC"), Dkt. No. 47), and Defendants filed an answer, in which Sharestates reasserted the first counterclaim and added an additional one seeking recovery of excess fees paid to Ammann beyond those he was entitled to under the parties' agreement, (*Ammann I*, Defs.' Am. Answer & Countercls. dated Oct. 27, 2022, Dkt. No. 52 at 13–14).  Arguing that the first counterclaim was retaliatory and frivolous because there is no private right of action under 15 U.S.C. § 78o(a)(1), Ammann sought Rule 11 sanctions.  (*Ammann I*, Pl.'s Mot. for Sanctions dated Aug. 28, 2023, Dkt. No. 89-1).  Meanwhile, the parties continued to engage in discovery.  Following several years of litigation and innumerable disputes, discovery in *Ammann I* closed on March 8, 2024.  (*Ammann I*, Order dated Feb. 28, 2024).[1]

On March 21, 2024, Judge Tiscione issued a Report and Recommendation finding that Sharestates's counterclaim for failure to maintain a broker-dealer license was frivolous, and recommended that the Court dismiss the counterclaim with prejudice and award Ammann reasonable attorney's fees.  (*Ammann I*, R. & R. dated Mar. 21, 2024, Dkt. No. 112 at 23).  Judge Seybert adopted the Report and Recommendation in its entirety.  (*Ammann I*, Order Adopting R. & R. dated June 17, 2024).  Ammann filed a motion for attorney's fees, (*Ammann I*, Pl.'s Mot. for Att'y's Fees dated June 28, 2024,

---

[1] Ammann contends that discovery in *Ammann I* continued through 2025, (*e.g.*, Proposed Second Am. Compl. ("PSAC"), attached to Pl.'s Mot. to Amend as Ex. A, Dkt. No. 188 ¶ 343), but as Defendants point out, Ammann cites to no evidence of any discovery taking place in 2025, (Defs.' Opp'n at 3 n.1), and the Court finds none.

Dkt. No. 127), and the Court awarded Ammann $ 42,414.01, (*Ammann I*, Mem. & Order dated Apr. 1, 2025, Dkt. No. 149 at 29).

In March 2025, Ammann's counsel filed a motion to withdraw, (*Ammann I,* Mot. to Withdraw dated Mar. 27, 2025, Dkt. No. 148), based on Ammann's discharge of his three attorneys and his desire to continue the case pro se, which the Court granted on April 8, 2025, (Min. Entry dated Apr. 9, 2025, Dkt. No. 152).  Ammann, acting pro se, filed a series of letters and motions pertaining to various sanctions motions and the fee award, (*e.g.*, *Ammann I*, Pl.'s Mot. to Compel Payment of Sanctions and for Contempt of Ct. dated Apr. 14, 2025, Dkt. No. 160), as well as the pending motion to amend.

While still represented by counsel in *Ammann I*, and after the close of discovery, Ammann, proceeding pro se, commenced *Ammann II* on September 16, 2024, against Defendants Sharestates Inc., Allen Shayanfekr, Ray Davoodi, Radni Davoodi, David Sakhai, Jason Chapnik, James Merkur, Intercap Equity, Intercap Income, and Golenbock Eiseman Assor Bell & Peskoe LLP, asserting a number of claims—including malicious prosecution, abuse of process, and a variety of fraud claims.  (*Ammann II*, Compl. at 1, 4–5).  Following a premotion conference ("PMC") at which the Court addressed several issues with Ammann's Complaint, (*Ammann II*, Min. Entry dated Nov. 26, 2024, Dkt. No. 33), Ammann filed an Amended Complaint, (*Ammann II*, Am. Compl.).  Rather than correcting the issues identified at the PMC, for example, pleading his fraud claims with greater specificity, Ammann named 37 new Defendants, (*id.* ¶¶ 6–9, 11–26), and asserted at least six additional claims, (*id.* ¶¶ 58–72, 87, 93–110).  Following filing of the Amended Complaint, a flurry of filings ensued by both Defendants and Ammann.

Defendants, despite many of them being represented by the same counsel, separately filed nearly a dozen requests for premotion conferences to dismiss the Amended Complaint.  (*Ammann II*, Mots. for PMC dated Apr. 16, 2025, Dkt. Nos. 40, 41, 43; Mot. for PMC dated May 6, 2025, Dkt. No. 69; Mot. for PMC dated May 13, 2025, Dkt. No. 72; Mot. for PMC dated May 14, 2025, Dkt. No. 73; Mots. for PMC dated May 15, 2025, Dkt. Nos. 80, 82; Mots. for PMC dated May 30, 2025, Dkt. Nos. 93, 95; Mot. for PMC dated June 12, 2025, Dkt. No. 115).  Ammann filed a motion for a preliminary injunction, (*Ammann II*, Pl.'s Mot. for Prelim. Inj. dated May 5, 2025, Dkt. No. 68); several motions to compel, (*e.g.*, *Ammann II*, Pl.'s Mot. to Compel Early Produc. of All Insurance Policies dated June 9, 2025, Dkt. No. 108); and a motion to disqualify defense counsel Michael Munoz, (*Ammann II*, Pl.'s Mot. to Disqualify Counsel dated May 15, 2025, Dkt. No. 84). On June 16, 2025, the Court barred both sides from making additional filings in *Ammann II* absent leave of Court.  (*Ammann II*, Order dated June 16, 2025).  Ultimately, the Court denied all of Defendants' PMC requests and Ammann's motion for a preliminary injunction and directed the parties to full briefing on a motion to dismiss limited solely to the issue of duplicative litigation.  (*Ammann II*, Order dated July 1, 2025, Dkt. No. 129).[2]

Ammann seeks to amend his Complaint in *Ammann I* to add 21 new Defendants and 18 new claims, including several claims asserted in *Ammann II*.  (*See Ammann I*, Proposed Second Am. Compl. ("PSAC"), attached to Pl.'s Mot. to Amend as Ex. A, Dkt.

---

[2] Both cases were transferred to the undersigned from the Honorable Joanna Seybert on April 10, 2025.

No. 188).[3]  At the same time, the *Ammann II* Defendants have moved to dismiss *Ammann II* on the grounds that it is duplicative of *Ammann I*.  (Defs.' Mot. to Dismiss at 1).  For the reasons explained below, the Court denies Ammann's motion to amend in *Ammann I* and grants the motion to dismiss *Ammann II*.

DISCUSSION

**I.      Motion to Amend (*Ammann I*)**

After the period to amend as of right has passed, motions to amend pleadings are governed by two standards.  The first, a "liberal" and "permissive" standard, *Sacerdote v. New York Univ.*, 9 F.4th 95, 115 (2d Cir. 2021), directs courts to "freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The second permits motions to amend only upon a showing of "good cause."  *Id.* R. 16(b)(4).  "The [Rule 15] period of 'liberal' amendment ends if the district court issues a scheduling order setting a date after which no amendment will be permitted."  *Sacerdote*, 9 F.4th at 115.  If the court issues a Rule 16 order that explicitly "state[s] that no amendment will be permitted" after a date certain, the moving party must demonstrate good cause for permitting the amendment.  *Id.* at 115–16.

If, however, the district court's Rule 16 order does not set a date after which motions to amend are not permitted (for example, by simply setting a deadline for amended pleadings to be filed), there is no order "trigger[ing] the stricter Rule 16(b)(4)

---

[3] Though Ammann contends that his motion to amend is an attempt to consolidate *Ammann I* and *Ammann II*, (*Ammann I*, Pl.'s Mot. to Amend at 4), the PSAC includes several new defendants and causes of action not previously asserted in either case.  For example, the PSAC asserts new claims against proposed Defendants Markel Insurance Company and Fortegra Specialty Insurance Company, (PSAC ¶¶ 446–53, 483–91), who are not named in either *Ammann I* or *Ammann II*.

7

'good cause' standard." *Id.* at 115. And therefore, any motions are governed solely by the more liberal Rule 15 standard.

Defendants contend that the Rule 16 good-cause standard applies to Ammann's proposed amendments because of the Court's entry of a scheduling order. (*Ammann I*, Defs.' Opp'n at 6). The Scheduling Order stated that the "[d]eadline to initiate the process for joinder of additional parties and or/amendment of pleadings" was "November 4, 2021." (*Ammann I*, Initial Case Management & Scheduling Order filed Sep. 2, 2021, Dkt. No. 16 at 1). But the Scheduling Order did not state that after November 4, 2021, further amendments would not be permitted. (*Id.*). Indeed, Ammann was permitted to file an amended pleading after this date—he filed his first Amended Complaint on September 29, 2022. (*Ammann I*, FAC). Accordingly, the Court considers Ammann's motion under the more liberal Rule 15 standard. *See, e.g.*, *Zou v. Han*, 797 F. Supp. 3d 199, 203 (E.D.N.Y. 2025) (applying Rule 15 where scheduling order setting deadline to amend pleadings "did not state that after December 15, further amendments would not be permitted" and "Plaintiffs were permitted to file amended pleadings after t[hat] date"); *Hossain v. Unilever U.S., Inc.*, No. 21-CV-2833, 2023 WL 4405654, at *5 (E.D.N.Y. July 7, 2023) (applying Rule 15 where the scheduling order "set a deadline for filing amendments without specifying that further amendments were prohibited").

Rule 15 provides that leave to amend should be "freely give[n]." Fed. R. Civ. P. 15(a)(2). "Nonetheless, such leave may be denied 'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *Yerkyn v.*

8

*Yakovlevich*, 164 F.4th 224, 227 (2d Cir. 2026) (quoting *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009)).[4]

Ammann's PSAC seeks to add (1) a series of tort claims; (2) a series of claims relating to Defendants' alleged failure to disclose insurance coverage; (3) a series of claims relating to litigation misconduct; and (4) a claim for violation of New York's Uniform Voidable Transactions Act.  As explained below, the Court denies Ammann's motion for leave to amend to assert these new claims based on undue delay, prejudice, or futility.

### 1. Tort Claims

#### A.  Undue Delay

"[T]he court . . . has discretion to deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice other parties, or where the belated motion would unduly delay the course of proceedings by, for example, introducing new issues for discovery." *McCulloch v. Town of Milan*, 559 F. App'x 96, 100 (2d Cir. 2014) (quoting *Grace v. Rosenstock*, 228 F.3d 40, 53–54 (2d Cir. 2000)).  "Although mere delay, absent a showing

---

[4] Because Ammann's motion seeks to add new parties, it is also governed by Rule 21, which provides that "the court may at any time, on just terms, add or drop a party."  Fed. R. Civ. P. 21.  However, "the same standard of liberality applies under either Rule."  *Clarke v. Fonix Corp.*, No. 98-CV-6116, 1999 WL 105031, at *6 (S.D.N.Y. Mar. 1, 1999), *aff'd*, 199 F.3d 1321 (2d Cir. 1999); *see also In re Orion HealthCorp, Inc.*, 95 F.4th 98, 102 (2d Cir. 2024) ("Rule 15(a) . . . appl[ies] to amendments seeking to add parties."); *Shi Ming Chen v. Hunan Manor Enter., Inc.*, 437 F. Supp. 3d 361, 364 (S.D.N.Y. 2020) ("If the amendment seeks to add a party, Rule 21 of the Federal Rules of Civil Procedure, which allows addition of a party . . . also comes into play.  However, that creates no additional obstacle, as the showing necessary under Rule 21 is the same as that required under Rule 15(a)." (quotation omitted)).

of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend, the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." *Carroll v. Trump*, 88 F.4th 418, 431 (2d Cir. 2023) (quotations omitted), *adhered to*, 151 F.4th 50 (2d Cir. 2025).

The Court addresses Ammann's new tort claims—for fraudulent inducement, negligence, gross negligence, breach of fiduciary duty, negligent misrepresentation, fraud, and aiding and abetting fraud, (PSAC ¶¶ 340–411)—together, given the substantial overlap in factual allegations supporting each of these claims. Ammann supports his tort claims with two primary sets of factual allegations, which the Court groups as follows—(1) factual allegations asserted in his prior complaints, and (2) factual allegations not asserted in his prior complaints[5]—and addresses in turn.

Ammann alleges that Defendants breached their duties to him by: (1) "[f]ailing to accurately track, calculate, and report [his] commissions . . . and misapplying commission rates (e.g., applying 2% instead of 10% on warehouse-line sales)," (*id.* ¶¶ 352(i), 364(i); 375(b–c), 385(a–b)); (2) "[f]ailing to implement or maintain adequate accounting systems, controls, or oversight to ensure accurate commission calculations,

---

[5] To the extent Ammann asserts tort claims based on insurance agreements (PSAC ¶¶ 352(v), 364(vi), 375(e)), these claims only fail on futility grounds. *See infra* pp. 15–22.

10

despite repeated notifications of errors," (*id.* ¶¶ 352(ii), 364(i–iii), 375(b), 384(c), 404(b));[6] and (3) "[n]egligently engaging in or approving retaliatory tactics, such as filing a frivolous counterclaim (sanctioned under Rule 11) and purporting to charge negative commissions," (*id.* ¶¶ 352(vi), 375(d), 404(e)).

These allegations were in his prior complaints.  They simply had not been transformed into causes of action.  Ammann's initial Complaint—filed on May 17, 2021—contained the same allegations that the monthly spreadsheets Defendants sent Ammann summarizing his sales and earned commissions were riddled with errors, (*Ammann I*, Compl. ¶¶ 55–56), Defendants misapplied Ammann's commission rate, (*id.* ¶¶ 87, 112, 134), and Defendants failed to implement adequate accounting systems even after Ammann notified them of repeated errors, (*id.* ¶¶ 57–58).  Ammann's FAC also included these allegations, and allegations relating to Defendants' retaliatory counterclaim and charging of negative commissions.  (*See Ammann I*, FAC ¶¶ 132–42 (discussing at length Sharestates's frivolous counterclaim); *id.* ¶ 136 ("Defendants during the course of this litigation have begun to charge Plaintiff a *negative commission* . . . selling loans to Plaintiff's investors *at a loss* and, upon doing so,

---

[6] Ammann also asserts that Shayanfekr, proposed Defendants Radni Davoodi, Ray Davoodi, Sakhai, Chapnik, Merker, Mathoda, Leccese, Joseph, and Doshi, as officers and directors of Sharestates, and proposed Defendants Mockler, Deldonna, Liu, Chan, and Maddali, who served in accounting or IT personnel roles at Sharestates, "[n]egligently supervis[ed] or fail[ed] to supervise financial reporting and accounting processes." (PSAC ¶ 352(iii)).  This claim for negligent supervision rests on the same underlying facts—the improper accounting for and payment of commissions—that Ammann has known about for years.

[claiming] that Plaintiff owes Sharestates a *negative* or *reverse* commission for these sales.")).

Ammann supports some of his tort claims with additional factual allegations not previously made. But even these newer factual allegations, though not previously asserted, consist of information Ammann has known for years. To start, Ammann asserts several new allegations based on information he learned in discovery. First, Ammann, in connection with his fiduciary duty claims, asserts that Defendants diverted, concealed, or misallocated revenues to reduce his commissions. (PSAC ¶ 375(a)). He alleges that Sharestates's document production revealed "discrepancies" suggesting unapproved or insider entities were diverting broker fees to reduce his commission payments. (*Id.* ¶ 216). The document production took place years ago. (*See Ammann I*, Order dated Feb. 28, 2024 (setting close of discovery for March 8, 2024)). Second, Ammann alleges that several defendants made misrepresentations to him in emails—referring to sworn declarations by Diane Mockler and Amy Doshi, presumably also produced in discovery, and to emails and documents from 2017 and 2019—as additional support for his negligent misrepresentation and fraud claims. (PSAC ¶¶ 384(d), 394(b), 394(c)). Third, he relies on facts uncovered at Shayanfekr's deposition *in March 2023* to support his fraudulent inducement claim. (*See id.* ¶ 343; Dep. of Allen Shayanfekr, attached to Defs.' Opp'n as Ex. A, Dkt. No. 189 at 31–35). Ammann knew all these facts since at least March 8, 2024, when discovery closed, if not earlier.

Ammann also asserts that Defendants "misrepresent[ed] to the Court that Sharestates lacked loan-level data in QuickBooks," (PSAC ¶¶ 352(iv), 364(iv), 384(d), 405(b)), as additional support for several of his claims. But Ammann has known about this alleged misrepresentation since at least April 29, 2024, because Sharestates's misrepresentations were the subject of a Rule 37 sanctions motion filed by Ammann's counsel. (*Ammann I*, Pl.'s Mot. for Sanctions Under Rule 37(a)(5) filed Apr. 29, 2024, Dkt. No. 116-1 at 1–2; Defs.' Opp'n at 9–10). And lastly, Ammann refers to lawsuits filed by Leccese in 2023, (PSAC ¶¶ 364(iii), 375(g), 385(d)), and by Toorak Capital Partners LLC and USST Assets Ltd. in 2021, (*id.* ¶¶ 208–09), as support for several of his claims. This information has been publicly available to Ammann for years.

In sum, Ammann has known about the facts that underlie his new tort claims for years—and has provided no cogent explanation for his multi-year delay in seeking amendment.

### B.    Prejudice

In assessing prejudice, the Court considers, among other factors, "whether an amendment would require the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute." *Carroll*, 88 F.4th at 431 (quotation omitted). It is within the Court's discretion to deny leave to amend when a plaintiff has unduly delayed asserting new claims after the close of discovery. *See United States v. Buff*, No. 23-1070, 2024 WL 4262956, at *3 (2d Cir. Sep. 23, 2024) (affirming denial of leave to amend because of the "belated timing of

13

the motion and the fact that discovery would have to be reopened") (quotation omitted)).

As noted, Ammann waited years to assert new claims against new defendants and has not provided a satisfactory explanation for the delay.  Even in the absence of delay, there would be significant prejudice to the existing Defendants from permitting the amendment at this stage of this case.  Discovery closed on March 8, 2024, over two years ago.  Even though the new claims repackage existing factual allegations, the existing Defendants would have to reopen discovery, and, for example, retake depositions that have already been completed.  A party's strategy in discovery is altered by the legal framing of the claims by the plaintiff.  While it is fair to reframe existing facts in the guise of new claims when discovery is still open, or only recently concluded, it is another thing entirely to reopen discovery years later and force a revised discovery strategy on other parties.  Plus, the amendment seeks to add new parties to the case—more than 20 of them—and individuals who were previously understood only to be witnesses are now potentially liable.  Each of these new defendants would be entitled to take discovery, meaning for the existing parties, they would be subject to renewed (and reopened) discovery from the new parties.  *See Shi Ming Chen v. Hunan Manor Enter., Inc.*, 437 F. Supp. 3d 361, 366 (S.D.N.Y. 2020) ("[T]hese proposed new defendants are not before the Court and reopening the case to add them would certainly risk a re-do of the entire discovery process inasmuch as each new defendant would be entitled to obtain discovery from the plaintiffs and potentially from co-defendants.").  Ammann's proposed tort claims "would essentially require starting this case over again from

14

scratch." *Solair v. Livingston Prods., Inc.*, No. 11-CV-2414, 2012 WL 13388366, at *5 (S.D.N.Y. Aug. 27, 2012).[7] That would turn this five-year-old case—which stands on the brink of summary judgment practice—into a seven- or eight-year endeavor, delaying the benefit of resolution to all parties.

Accordingly, the Court denies Ammann's motion to amend with respect to his tort claims—causes of action six through twelve in the PSAC—based on his undue delay in asserting the new claims, and the substantial prejudice to Defendants that would result from reopening discovery.

### 2. Insurance Claims

Ammann seeks to add new claims arising out of Defendants failure to timely disclose their insurance coverage. These claims—though not unduly delayed—are futile.

A "motion to amend will be considered futile if the Court determines, 'as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.'" *Charlot v. Ecolab, Inc.*, 97 F. Supp. 3d 40, 61 (E.D.N.Y. 2015) (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)) (adopting report and recommendation); *see also, e.g., Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 260 (2d Cir. 2002) (reversing

---

[7] In addition to requiring the parties to restart discovery, "the new defendants . . . would have to be served with process, and may challenge the Court's jurisdiction." *Solair*, 2012 WL 13388366, at *5. Indeed, several of the proposed new defendants have already asserted challenges to the Court's personal jurisdiction over them in the motion to amend briefing. (*See Ammann I*, Defs.' Opp'n at 23).

the district court's order granting plaintiff leave to amend complaint where his proposed new claim "[wa]s barred by substantive contract law").[8]

"The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of . . . claims for relief." *Amadei v. Nielsen*, 348 F. Supp. 3d 145, 155 (E.D.N.Y. 2018) (citing *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007)). In deciding such a motion, the Court must "construe the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019) (quotations and alteration omitted); *Amadei*, 348 F. Supp. 3d at 155 ("[W]hen reviewing a complaint on a motion to dismiss for failure to state a claim, the court must accept as true all allegations of fact in the complaint and draw all reasonable inferences in favor of [the non-moving party].").

"To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain more than "naked assertion[s] devoid of further factual enhancement." *Id.* (quotations omitted). In other words, a plausible claim contains "factual content that allows the court to draw the

---

[8] On a motion to amend—which employs the same standard to evaluate futility as a motion to dismiss, *Charlot*, 97 F. Supp. 3d at 61—a court may consider any document "incorporated in the complaint by reference," "integral to the complaint," or subject to "judicial notice." *Clark v. Hanley*, 89 F.4th 78, 93 (2d Cir. 2023) (quotations omitted).

reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; Fed. R. Civ. P. 8(a)(2). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citations omitted). The determination of whether a party has alleged a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

This pleading requirement "does not impose a probability standard at the motion-to-dismiss stage." *Mosaic Health, Inc. v. Sanofi-Aventis U.S., LLC*, 156 F.4th 68, 77 (2d Cir. 2025) (noting that plausibility does not equate to probability). And "on a Rule 12(b)(6) motion it is not the province of the court to dismiss the complaint on the basis of the court's choice among plausible alternatives. Assuming that [plaintiff] can adduce sufficient evidence to support its factual allegations, the choice between or among plausible interpretations of the evidence will be a task for the factfinder." *Id.* (quotations omitted).

The insurance claims are alleged against Sharestates and Shayanfekr; a series of proposed new defendants consisting of present and former officers, board members, and employees of Sharestates and Sharestates's outside counsel Michael Munoz; and proposed new defendants Markel Insurance Company ("Markel") and Fortegra Specialty Insurance Company ("Fortegra"), with whom Sharestates maintains insurance policies. (PSAC ¶¶ 419–38, 446–63, 483–508). The following insurance-related claims are made against various permutations of these defendants: (1) breach of contract and

duty based on the alleged failure to tender insurance claims to Markel and Fortegra, (*id.* ¶¶ 419–22, 502–08); (2) for injunctive relief compelling Defendants and proposed defendants to tender claims to Markel and Fortegra, (*id.* ¶¶ 454–63, 492–501); (3) for a declaratory judgment that the insurance policies cover the claims, that the insurers must indemnify the insureds, that independent counsel is required, and that the insurers are estopped from denying coverage, (*id.* ¶¶ 446–52, 483–91); and (4) fraudulent concealment of the Markel Policy, (*id.* ¶¶ 426–36).

"Absent a contractual relationship there can be no contractual remedy. Such a relationship exists if the plaintiff is in privity of contract with the defendant or is a third-party beneficiary of the contract. Proving third-party beneficiary status requires that the contract terms clearly evidence an intent to permit enforcement by the third party in question." *Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, Nat'l Ass'n*, 747 F.3d 44, 49 (2d Cir. 2014) (cleaned up); *see also Dormitory Auth. v. Samson Constr. Co.*, 30 N.Y.3d 704, 710 (2018) ("A third party may sue as a beneficiary on a contract made for its benefit. However, an intent to benefit the third party must be shown, and, absent such intent, the third party is merely an incidental beneficiary with no right to enforce the particular contracts.") (cleaned up)).

Ammann is not a party to the agreements between Sharestates and the insurance companies; nor is he an identified third-party beneficiary. He cannot assert a claim for breach of those agreements, or seek related injunctive or declaratory relief from such a

18

breach.[9]  *E.g., Commonwealth Land Title Ins. Co. v. Am. Signature Servs., Inc.*, No. 13-CV-3266, 2014 WL 672926, at *7 (E.D.N.Y. Feb. 20, 2014) ("[I]t is clear that the Policy does not demonstrate any intent to benefit plaintiffs such that they have a cause of action under the Policy . . . plaintiffs point to no provision in the Policy that reflects such an intent.").

Ammann alleges that the non-insurer defendants owed him a duty to tender a claim to the insurers pursuant to an implied covenant of good faith and fair dealing, arising from Ammann's employment agreement, and New York insurance law.  (PSAC ¶ 457).  These assertions are meritless.  Ammann offers no evidence that his employment contract contained provisions relating to Sharestates's insurance, and the implied covenant of good faith and fair dealing "does not create obligations that go beyond those intended and stated in the language of the contract."  *Mariah Re Ltd. v. Am. Fam. Mut. Ins. Co.*, 52 F. Supp. 3d 601, 611 (S.D.N.Y. 2014), *aff'd*, 607 F. App'x 123 (2d Cir. 2015).  As for Ammann's assertion that the proposed defendants owed him a duty to disclose the insurance policies pursuant to "New York law requiring good-faith

---

[9] The parties do not address what law governs the insurance agreements. Ammann presumes it is New York law in the PSAC.  (*E.g.*, PSAC ¶ 448).  Because the parties assume the insurance agreements are governed by New York law, the Court adopts the parties' assumption.  *See Martinez v. Bloomberg LP*, 740 F.3d 211, 223 (2d Cir. 2014) ("[P]arties by their acquiescence . . . may induce the trial court to assume that foreign law is similar to that of the forum . . . with the result that a court does not err when it articulates its decision by reference to the law of the forum." (quotation omitted)); *e.g.*, *Blodgett v. Siemens Indus., Inc.*, No. 13-CV-3194, 2018 WL 385477, at *5 (E.D.N.Y. Jan. 11, 2018) ("Plaintiffs' . . . citation solely to New York law in support of their . . . claims in their prior submissions is deemed by this Court to constitute an implied consent to use New York law, which settles the choice of law issue in favor of the application of New York law.").

cooperation with insurers . . . to prevent harm to claimants," he cites no authority that supports the existence of a legal duty to third parties.  (PSAC ¶ 429(b)).

New York Insurance Law § 3420(b) is not applicable either.  It "grants an injured party a right to sue the tortfeasor's insurer, but only under limited circumstances—the injured party must first obtain a judgment against the tortfeasor, serve the insurance company with a copy of the judgment, and await payment for 30 days."  *Wadsworth v. Allied Pros. Ins. Co.*, 748 F.3d 100, 105 (2d Cir. 2014).  Ammann has yet to obtain a judgment against any party.  *E.g.*, *St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 83 (2d Cir. 2005) ("St. Paul argues that it should be allowed to appeal the dismissal of the third-party claims because it has an interest in seeing that any judgment it wins against UBS will be collectible.  However, under New York law, St. Paul does not have an interest sufficient to allow it to assert claims directly against [UBS's insurers] unless St. Paul first obtains a judgment against UBS.").

Accordingly, Ammann's fourteenth, seventeenth, eighteenth, twenty-first, twenty-second, and twenty-third causes of action—for breach of contract and duty based on failure to tender an insurance claim to Markel and Fortegra, for injunctive relief compelling Defendants and proposed defendants to tender claims to Markel and Fortegra, and for declaratory judgments against Markel and Fortegra—are futile.

Ammann's remaining claim for fraudulent concealment—the PSAC's fifteenth cause of action—fares no better.  Ammann asserts that the proposed defendants concealed the existence of the Markel and Fortegra policies, which they had a duty to disclose under Rule 26 of the Federal Rules of Civil Procedure.  (PSAC ¶ 429(a)).  But

20

discovery violations, like failing to disclose required information, do not give rise to independent tort claims.  *See Agoliati v. Block 865 Lot 300 LLC*, No. 19-CV-5477, 2021 WL 3193239, at *5 (E.D.N.Y. Apr. 20, 2021) ("Courts in this circuit have applied the rationale of *Ortega v. City of New York*, 9 N.Y. 3d 69 (2007) which held that a party may not seek to recover damages for discovery violations as a separate tort. . . . The Court ruled that traditional remedies such as monetary sanctions, adverse inference instructions, and dismissal, among other sanctions, already existed to deter parties from engaging in such discovery violations."), *report and recommendation adopted*, 2021 WL 3188397 (July 27, 2021); *Mohammed v. Delta Air Lines, Inc.*, No. 08-CV-1405, 2011 WL 5553827, at *4 (E.D.N.Y. June 8, 2011) ("Because, per *Ortega*, traditional remedies are sufficient to deter spoliation by opposing parties, plaintiff may not employ independent causes of action based on the alleged violations.  This logic is applicable whether the claim is styled as spoliation, fraudulent concealment, or fraudulent misrepresentation.  As such, amending the complaint would be futile because, since New York courts are unlikely to recognize the proffered causes of action, plaintiff is unable to state a claim upon which relief could be granted."), *report and recommendation adopted*, 2011 WL 5554269 (Nov. 15, 2011).  The purpose of Rule 26's insurance disclosure requirement is to "enable counsel for both sides to make the same realistic appraisal of the case, so that settlement and litigation strategy are based on knowledge and not speculation."  Fed. R. Civ. P. 26 advisory committee's note to 1970 amendment.  But "[i]n no instance does disclosure make the facts concerning insurance coverage admissible in evidence."  *Id.*  The inadmissibility of facts concerning insurance policies in evidence further underscores

21

that there is no independent cause of action for failure to disclose required insurance information under Rule 26.

### 3. Litigation Misconduct Claims

#### i. N.Y. Judiciary Law § 487

Ammann's thirteenth cause of action asserts a claim against proposed defendant Munoz, Sharestates's outside counsel, under New York Judiciary Law § 487. (PSAC ¶¶ 412–18). Section 487 provides "[a]n attorney or counselor who . . .[i]s guilty of any deceit or collusion, . . . with intent to deceive . . . forfeits to the party injured treble damages, to be recovered in a civil action." N.Y. Jud. Law § 487. If a plaintiff's complaint fails to "plausibly allege[] an intent to deceive the court," it fails to state a claim. *Haggerty v. Ciarelli & Dempsey*, 374 F. App'x 92, 93 (2d Cir. 2010). And "[a]llegations regarding an act of deceit or intent to deceive must be stated with particularity; the claim will be dismissed if the allegations as to scienter are conclusory and factually insufficient." *Facebook, Inc. v. DLA Piper LLP (US)*, 134 A.D.3d 610, 615 (1st Dep't 2015) (citations omitted).

Although Ammann identifies the alleged deceitful acts—i.e., filing Rule 26 disclosures that contained false statements, filing and defending a frivolous counterclaim, obstructing discovery, and concealing the insurance policies and stock-sale to Intercap Equity—he does not plead sufficient facts that suggest that Munoz knew any filings contained false information or intended to deceive Ammann or the Court through any of these actions. Because Ammann failed to plead facts showing that Munoz knowingly and intentionally tried to deceive the parties or the Court—

22

other than in a conclusory fashion, (*see* PSAC ¶¶ 415–16) — the PSAC fails to state a claim under Section 487. *See Delaney v. HC2, Inc.*, No. 25-0073, 2026 WL 366443, at *3 (2d Cir. Feb. 10, 2026) (affirming district court's dismissal of Section 487 claim based on false proof of claim and affidavits because pleading lacked "sufficient factual support to plausibly allege that any actionable statements [by attorney] were both false and intentionally made"). The claim is therefore futile.[10]

### ii. Abuse of Process

Ammann's twentieth cause of action asserts a claim against Sharestates and Shayanfekr, and proposed defendant Munoz, for abuse of process based on Sharestates's frivolous counterclaim. (PSAC ¶¶ 473–80). To state a claim for abuse of process under New York law, plaintiff must allege facts that "show that the defendant '(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process.'" *Hernandez v. United States*, 939 F.3d 191, 204 (2d Cir. 2019) (quotation omitted). "[T]he

---

[10] Even if this pleading defect could be cured, the claim is still futile, because Section 487 cannot *ever* reach attorney misconduct in the federal courts. While the Second Circuit declined to address this question, the district court in *Delaney* concluded Section 487 did not apply to attorney conduct in federal courts, given the availability of other sanctions in federal court, and the ostensible reach of the statute to regulate conduct in *state* courts. *See Delaney v. HC2, Inc.*, 761 F. Supp. 3d 641, 664–69 (S.D.N.Y. 2025) ("Because Section 487 is specifically directed to misconduct in courts, and misconduct in federal courts is not within the reach of the statute, it must be directed towards misconduct in New York courts."), *aff'd*, No. 25-0073, 2026 WL 366443, at *3 (2d Cir. Feb. 10, 2026). And in this case, Ammann has already received (or could receive) relief based on Rule 11 and the other sanction provisions in Title 28 and the Federal Rules of Civil Procedure for discovery violations or other litigation misconduct.

gist of the tort is 'the improper use of process after it is issued' by 'an unlawful interference with one's person or property.'" *Tenore v. Kantrowitz, Goldhamer & Graifman, P.C.*, 76 A.D.3d 556, 557 (2d Dep't 2010) (quoting *Williams v. Williams*, 23 N.Y.2d 592, 596 (1969)).

"[T]he mere 'institution of a civil action by summons and complaint is not legally considered process capable of being abused.'" *Manhattan Enter. Grp. LLC v. Higgins*, 816 F. App'x 512, 514 (2d Cir. 2020) (quoting *Curiano v. Suozzi*, 63 N.Y.2d 113, 116 (1984)). "Because no such interference [with person or property] flows from the issuance of a civil summons, the commencement of a civil action cannot, by itself, support a plaintiff's claim for abuse of process, even when the civil action was 'intended to cause the plaintiff[ ] expense and to burden [him] with the defense of a protracted legal proceeding.'" *Id.* (quoting *Curiano*, 63 N.Y.2d at 116). Accordingly, a "frivolous lawsuit," without more, namely interference with one's person or property, is not "actionable as abuse of process." *See id.*

Even though the counterclaim violated Rule 11, Ammann's PSAC still fails to state a claim for abuse of process. Ammann alleges that Sharestates asserted the counterclaim to increase his litigation costs and retaliate against him for filing suit. (PSAC ¶¶ 475–76). These allegations do not suffice to show that Sharestates sought to achieve some other "collateral objective," by filing the counterclaim. *Hernandez*, 939 F.3d at 204 (quotation omitted); *e.g.*, *Manhattan Enter. Grp.*, 816 F. App'x at 514 ("The District Court correctly dismissed the Amended Complaint insofar as it was predicated upon the filing of lawsuits. The core of Plaintiffs' grievance is that Defendants filed and

24

prosecuted a series of duplicative, frivolous, and malicious lawsuits aimed at harassing Plaintiffs and draining their resources."); *Mahn v. Allegis Grp., Inc.*, No. 24-CV-8326, 2025 WL 3704536, at *5 (S.D.N.Y. Dec. 22, 2025) ("[P]leadings do not, by themselves, interfere with one's person or property, and accordingly, the filing of a pleading is not legally considered process capable of being abused[.]" (quotation omitted)), *appeal docketed*, No. 26-86 (2d Cir. Jan. 15, 2026).

### iii. Malicious Prosecution

Ammann's nineteenth cause of action asserts a malicious prosecution claim against Sharestates, Shayanfekr, and proposed defendant Munoz based on Sharestates's frivolous counterclaim.  (PSAC ¶¶ 464–72).  Malicious prosecution claims are governed by a one-year statute of limitations, N.Y. C.P.L.R. § 215(3), which "accrues when the action alleged to have been brought maliciously terminates favorably to the plaintiff," *Scomello v. Caronia*, 232 A.D.2d 625, 625 (2d Dep't 1996); *Ziming Shen v. City of New York*, 725 F. App'x 7, 15 (2d Cir. 2018) ("New York's one-year statute of limitations commences only upon favorable termination of a prosecution.").

In the present context, "termination of the proceedings in the plaintiff's favor" can mean one of two things for Ammann's malicious prosecution claim—either Ammann's malicious prosecution claim accrued upon the Court's dismissal of the counterclaim on June 17, 2024, (*Ammann I*, Order Adopting R. & R.), or Ammann's malicious prosecution claim has yet to accrue because he must wait for the litigation in *Ammann I* to conclude.  The parties do not address this issue, but in either scenario, the claim is futile: Ammann's malicious prosecution claim is either time-barred or

25

premature.  If the dismissal of the counterclaim constitutes "favorable termination," the claim accrued on June 17, 2024, and it is time-barred because he did not assert it until July 2025 at the earliest, when he initially sought leave to amend his complaint.  (Mot. for Leave to File Second Am. Compl. filed July 2, 2025, Dkt. No. 176).[11]  If "favorable termination" cannot occur until the entire lawsuit concludes, his malicious prosecution claim is premature.  In either case, amendment is futile.

### 4.  New York Voidable Transactions Act

Under New York law, "[a] transfer made or obligation incurred by a debtor is voidable as to a creditor . . . if the debtor made the transfer or incurred the obligation . . . with actual intent to hinder, delay or defraud any [present or future] creditor of the debtor."  *Athena Art Fin. Corp. v. Certain Artwork by Jean-Michel Basquiat Entitled Humidity, 1982*, 790 F. Supp. 3d 247, 276 (S.D.N.Y. 2025) (quoting N.Y. Debt. & Cred. Law § 273(a)(1) (the New York Voidable Transactions Act or "VTA")).

Ammann's sixteenth cause of action asserts a VTA claim against Sharestates and Shayanfekr, and proposed new defendants Intercap Equity Inc., Chapnik, Merkur, Radni Davoodi, Ray Davoodi, and Sakhai.  (PSAC ¶¶ 439–45).  He alleges that in

---

[11] Contrary to Ammann's contentions, in this scenario, Rule 15(c) cannot save his malicious prosecution claim.  Rule 15(c)(1) provides that "[a]n amendment . . . relates back to the date of the original pleading when . . . the law that provides the applicable statute of limitations allows relation back" or "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  Fed. R. Civ. P. 15(c)(1)(A)–(B).  Ammann's malicious prosecution claim does not relate back to his prior pleadings, which were filed before the dismissal of the counterclaim.  *See supra* pp. 1, 4.  They contain no allegations of favorable termination, and a malicious prosecution claim cannot arise out of the facts set forth in them.

January 2025, Sharestates "transferred 100% of its equity and control to Intercap Equity Inc., a Canadian entity owned by Chapnik." (*Id.* ¶ 440). In a stock purchase agreement executed by Intercap Equity, "it acquired all of the outstanding capital stock held by shareholders of Sharestates." (*Id.* ¶ 297). Ammann contends that this transaction is a voidable transfer under the VTA, made with "intent to hinder, delay, or defraud" Ammann by rendering Sharestates "insolvent or undercapitalized." (*Id.* ¶¶ 441–42).

Defendants contend that Ammann fails to state a VTA claim because the alleged transaction was not made by "the debtor," Sharestates. Instead, any transfer of Sharestates's stock was, by definition, a shareholder transaction—not one conducted by Sharestates itself. (Defs.' Opp'n at 20–21). The Court agrees. Sharestates is the debtor, and the stock is not an asset that belongs to Sharestates—it belongs to the shareholders. *See AFP Imaging Corp. v. Ross*, 780 F.2d 202, 204 (2d Cir. 1985) ("New York follows the majority American rule, which treats shares of stock as the personal property of the shareholders. Obviously, a New York corporation, acting solely on its own, cannot 'cause' the sale of all its corporate shares for a consideration fixed by the corporation." (citation omitted)). Accordingly, the stock sale to Intercap Equity provides no basis for a VTA claim because it is not a transfer of Sharestates's assets, and therefore has no effect on Ammann's ability to recover a potential judgment against Sharestates. *See, e.g., Martes v. USLIFE Corp.*, 927 F. Supp. 146, 148 (S.D.N.Y. 1996) (finding no viable

27

fraudulent conveyance claim where the alleged fraudulent transfer "sold only . . . [the debtor's] stock").[12]

In sum, the Court denies Ammann's motion for leave to amend with respect to his tort claims (the PSAC's six through twelfth causes of action) because he has unduly delayed in asserting them, and allowing amendment now would inflict undue prejudice on Defendants.  And the Court denies Ammann's motion for leave to amend with respect to his insurance claims (the PSAC's fourteenth, fifteenth, seventeenth, eighteenth, twenty-first, twenty-second, and twenty-third causes of action), litigation misconduct claims (the PSAC's thirteenth, nineteenth, and twentieth causes of action), and New York Voidable Transactions Act claim (the PSAC's sixteenth cause of action) because those claims are futile.[13]

## II.    Motion to Dismiss (*Ammann II*)

"As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit." *Wang v. Ren*, No. 20-4216, 2023 WL 1977233, at *1 (2d Cir. Feb. 14, 2023) (quoting *Sacerdote v. Cammack Larhette Advisors, LLC*, 939 F.3d 498, 504 (2d Cir. 2019)).  "[T]wo suits are the same for the purposes of the rule against [duplicative litigation] when: (1) the parties in the later-

---

[12] Ammann asserts in his reply brief an alternate basis for his VTA claim—Sharestates's reimbursement of $ 20,000 in legal fees of a selling shareholder.  (*Ammann I*, Pl.'s Reply Mem. filed Aug. 20, 2025, Dkt. No. 190 at 12–13).  But the PSAC contains only one cursory reference to this reimbursement, (PSAC ¶ 298), without any allegations that it was made with "intent to hinder, delay or defraud any [present or future] creditor of the debtor," *Athena Art Fin. Corp*, 790 F. Supp. 3d at 276.

[13] The PSAC's first through fifth causes of action are the same as those already asserted in the FAC, so the Court does not address them.

28

filed suit are the same as, or in privity with, the parties in the earlier-filed suit; and (2) the claims asserted in the later-filed suit were, or could have been, raised in the earlier-filed suit." *Marciniak v. Mass. Inst. of Tech.*, No. 23-CV-10305, 2024 WL 4350872, at *8 (S.D.N.Y. Sep. 29, 2024) (citing *Cammack Larhette Advisors*, 939 F.3d at 504–06 & n.25).

For the reasons explained herein, *Ammann II* is duplicative of *Ammann I* and is therefore dismissed.

## A.  Identity of Claims Raised

The claims asserted in *Ammann II* could have been raised in *Ammann I*.  The claims asserted in the *Ammann II* Amended Complaint consist of either new theories of liability for the same factual allegations underlying Ammann's claims in *Ammann I*, (*e.g.*, *Ammann II*, Am. Compl. ¶ 84 (asserting fraud claim based on Sharestates's charging Ammann negative commissions, a fact already pled in *Ammann I*)), or claims based on litigation misconduct in *Ammann I*, (*e.g.*, *id.* ¶¶ 79–80 (asserting fraudulent misrepresentation claim based on court filings in *Ammann I*)).  Ammann contends that the claims in *Ammann II* could not have been pursued in *Ammann I* because they are based on facts that Ammann discovered later, i.e., during discovery in *Ammann I*.  (*See Ammann II*, Pl.'s Opp'n to Defs.' Mot. to Dismiss filed Sep. 9, 2025 ("Pl.'s Opp'n"), Dkt. No. 137 at 6–7).  But as the Court has explained, *see supra* pp. 9–16, Ammann could have sought leave to amend his complaint in *Ammann I* well before, based on these facts, but he did not.  He identifies no other claim that could not have been brought in *Ammann I*.

29

Indeed, he concedes that the proposed amendments in *Ammann I* "consolidated all viable claims from Ammann II" into the PSAC.  (*Ammann I*, Pl.'s Mot. to Amend at 1).[14]

## B.  Identity of Parties and Privity

The following circumstances demonstrate privity between two parties:

1) agreements by a nonparty to be bound by the determination of issues in an action between others; (2) certain pre-existing substantive legal relationships based in property law between the nonparty and the party, such as preceding and succeeding owners of property, bailee and bailor, and assignee and assignor; (3) representative suits where the nonparty's interest was adequately represented by a party with the same interests, such as class actions and suits brought by trustees, guardians, and other fiduciaries; (4) when a nonparty has assumed control over the litigation in which the judgment was rendered; (5) when a nonparty is acting as a proxy, agent, or designated representative of a party bound by a judgment; and (6) when a statutory scheme expressly forecloses successive litigation by nonlitigants, so long as the scheme comports with due process.

*Cammack Larhette Advisors*, 939 F.3d at 506 (citing *Taylor v. Sturgell*, 553 U.S. 880, 893–95 (2008)).

Ammann names nearly 50 defendants in his Amended Complaint in *Ammann II*, which fall into the following five categories: (1) Sharestates and Shayanfekr (the "*Ammann I* Defendants"); (2) present and former board members, officers, and employees of Sharestates (the "Sharestates Defendants"); (3) entities affiliated with Sharestates (the "Sharestates Affiliate Defendants"); (4) Intercap Inc. and its subsidiaries

---

[14] Ammann's addition of Matin Emouna—counsel to Shayanfekr, Ray Davoodi, Radni Davoodi, Sakhai, Mathoda, and himself in *Ammann II*—as a Defendant in the Amended Complaint does not change this result.  When *Ammann II* was filed, all of the claims could have been asserted in *Ammann I*.  Ammann's addition of Emouna in his Amended Complaint based on cursory allegations of litigation misconduct in *Ammann II* does not render *Ammann II* non-duplicative, and any new defendants could have been, but were not, added to *Ammann I*.

Intercap Equity Inc. and Intercap Income Inc. (the "Intercap Defendants"); and (5)

Sharestates's law firm Golenbock Eiseman Assor Bell & Peskoe LLP, several partners

and associates at the firm, and Matin Emouna, counsel to Shayanfekr and several other

defendants in *Ammann II* (the "Law Firm Defendants").

Sharestates and Shayanfekr are the same defendants named in *Ammann I*, and all

the other *Ammann II* Defendants are in privity with the *Ammann I* Defendants,

Sharestates and Shayanfekr.  The Sharestates Defendants, as board members, officers,

and employees of Sharestates, are in privity with Sharestates—Ammann makes no

allegations against these Defendants that arise from conduct outside of the scope of

their employment relationship with Sharestates.  *See, e.g.*, *Wang v. Ren*, No. 19-CV-5310,

2020 WL 6825675, at *2 (S.D.N.Y. Nov. 20, 2020) ("[C]ourts have long recognized that

privity exists between employees and their employers for res judicata purposes, and the

same principles regarding privity that apply in the context of claim preclusion . . . apply

in the context of the rule against duplicative litigation." (quotation and citation

omitted)), *aff'd*, No. 20-4216, 2023 WL 1977233 (2d Cir. Feb. 14, 2023).  The Sharestates

Affiliate Defendants are also in privity with Sharestates.  Ammann himself alleges that

these entities are "created, controlled, and operated by the officers and board members

of Sharestates Inc."  (*Ammann II*, Am. Compl. ¶ 6).  The same is true for Intercap Equity

Inc., Sharestates's parent company following the January 2025 stock sale—parent

companies are in privity with their wholly-owned subsidiaries.  *See, e.g.*, *Pittman v.

Scholastic Corp.*, No. 24-CV-1407, 2024 WL 2747802, at *3 n.4 (S.D.N.Y. May 22, 2024)

("[T]he parties would be deemed in privity with each other for the purposes of *res*

31

*judicata* based on the corporate parent-subsidiary relationship.").[15]  Lastly, the law firm defendants are in privity with Sharestates and Shayanfekr because they are or were acting as "agent[s], or designated representative[s]" of Sharestates and Shayanfekr, *see Cammack Larhette Advisors*, 939 F.3d at 506, and Ammann asserts claims against them based exclusively on alleged litigation misconduct.

Because the *Ammann II* Defendants are in privity with the *Ammann I* Defendants, and the claims asserted in *Ammann II* could have been asserted in *Ammann I*, *Ammann II* is duplicative and is dismissed.

The Court's denial of leave to amend in *Ammann I* does not change this result— the fact that the claims could have been asserted in *Ammann I* at some point does not mean they may be asserted in *Ammann I* now.  It only means that the claims fail for the separate reason that they are barred by Rule 15.  Permitting Ammann to maintain *Ammann II*, in which he asserts some of the same claims for which the court denies leave to amend in *Ammann I*, would allow an improper end-run around Rule 15.  *See Walton v. Eaton Corp.*, 563 F.2d 66, 71 (3d Cir. 1977) (en banc) ("[T]he court must insure that the plaintiff does not use the incorrect procedure of filing duplicative complaints for the purpose of circumventing the rules pertaining to the amendment of

---

[15] To the extent Ammann asserts claims against the other Intercap entities, Intercap Inc. and Intercap Income Inc., which may not be in privity with the *Ammann I* Defendants, he has no basis to assert any claims against these entities.  The *Ammann II* Amended Complaint contains no specific allegations against them, and Ammann seems to have named them merely because they hold additional assets that could satisfy a judgment, as they are only specifically mentioned in connection with his request for prejudgment attachment.  (*Ammann II*, Am. Compl. ¶ 132).

complaints[.]"); *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138–39 (2d Cir. 2000) (following

*Walton*).

Accordingly, the *Ammann II* Defendants' motion to dismiss is granted.

<u>CONCLUSION</u>

For the reasons explained above, Ammann's motion for leave to amend his

Complaint in *Ammann I* is denied, and the *Ammann II* Defendants' motion to dismiss

*Ammann II* is granted.  The Amended Complaint in *Ammann II* is dismissed.  And the

Clerk is directed to close Case No. 24-CV-6586.  The deadline to commence dispositive

motion practice in *Ammann I* is **April 16, 2026.**  The filing injunction is lifted only to

permit the parties to submit a joint proposed schedule for summary judgment practice

or any motion for reconsideration.  If any party seeks reconsideration, they may only do

so via letter no longer than 1,000 words in which they outline the basis for

reconsideration.  The Court will then determine whether to permit further briefing.

Such reconsideration request is governed by the timing requirements in the Local Civil

Rules.

SO ORDERED.

*/s/ Sanket J. Bulsara*
SANKET J. BULSARA
United States District Judge

Date:   March 17, 2026
           Central Islip, New York

33